**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD HARRINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 13 C 5458 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Richard Harrington's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] For the following reasons, the Court denies Mr. Harrington's Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

On June 23, 2010, a grand jury handed down a superseding indictment charging Mr. Harrington with conspiring to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Count One); money laundering in violation of 18 U.S.C. § 1956(a)(1)(B) (Counts Two and Three); possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Counts Four and Five); distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Counts Six and Fourteen); using a communication facility, namely a telephone, in committing and in causing and facilitating the conspiracy alleged in Count One in

---

[1] Although Mr. Harrington filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on July 26, 2013, he has since hired counsel who filed legal memoranda supporting Mr. Harrington's Section 2255 motion.

violation of 21 U.S.C. § 843(b) (Counts Seven, Ten, Thirteen, and Fifteen); and possession of a firearm in furtherance of and carried during and in relation to the conspiracy alleged in Count One in violation of 18 U.S.C. § 924(c)(1)(A) (Count Eighteen).

On January 31, 2011, Mr. Harrington entered a blind plea of guilty to Counts One, Two, and Three of the superseding indictment. The government then orally agreed to dismiss all distribution and phone counts as a result of Mr. Harrington's guilty plea on Counts One, Two, and Three. In his January 28, 2011 written plea declaration, Mr. Harrington admitted to the following:

> From 2007 until October 8, 2009, in Chicago, Illinois, and elsewhere, Mr. Harrington conspired with Valentine Reveles, David Wilson, Christopher Gathright, LaRoy Musking, Donald Smoot, Albert Holmes, Willie Foster, and Jason Johnson to possess and distribute a controlled substance, namely one kilogram or more of mixtures containing a detectable amount of heroin and 5 kilograms or more of mixtures containing a detectable amount of cocaine. Mr. Harrington and his coconspirators also obtained quantities of marijuana for resale.
>
> As part of this conspiracy, Mr. Harrington obtained wholesale quantities of heroin and cocaine from Valentine Reveles. He also obtained wholesale quantities of heroin and marijuana from Manuel Ramos. David Wilson also supplied the conspiracy with cocaine.
> ...
> At times, Mr. Harrington undertook steps to disguise the source of the proceeds he received for his drug trafficking activities. Specifically, on June 15, 2007, in Lisle, Illinois, Mr. Harrington conducted a Western Union wire transfer to DaimlerChrysler Financial Services for a 2007 Mercedes Benz s550v, in the amount of $2000, using funds he had received through his participation in the drug conspiracy. On June 12, 2008, he conducted a similar transaction in the amount of $1149.74, which he had also obtained through the drug conspiracy.

(09 CR 0814, R. 346, Plea Decl., at 2-3.)

Mr. Harrington's plea declaration also outlined the potential penalties he faced by pleading guilty — "For Count One, a maximum sentence of life imprisonment, a statutory

minimum sentence of 10 years, and a maximum fine of $4,000,000. For Counts Two and Three, a maximum sentence of 20 years' imprisonment and a maximum fine of $500,000." (*Id*. at 4.) In addition, at his change of plea hearing, the Court informed Mr. Harrington of the maximum penalties he faced on these counts, as well as the mandatory minimum on Count One, and Mr. Harrington confirmed that he understood that the Court could impose a sentence up to the statutory maximum. (09 CR 0814, 1/31/11 Change of Plea Hr'g Tr., at 15-16.)

Furthermore, Mr. Harrington stated in his plea declaration that "Mr. Harrington notes, but disagrees with, the government's position that his offense level should be increased by 2 points for possession of a firearm under Guideline § 2D1.1(b)(1)." (Plea Decl., at 2-3.) Also, Mr. Harrington acknowledged that the amount of heroin involved in the conspiracy that the government could prove by a preponderance of the evidence was either between 3 and 10 kilograms or between 10 and 30 kilograms. (*Id*.) The government's position was that it could prove in excess of 30 kilograms of heroin for a base level offense of 38. (*Id*.) Mr. Harrington further acknowledged that he was an organizer or leader for purposes of U.S.S.G. § 3B1.1(a). (*Id*. at 5.) At his change of plea hearing, the Court advised Mr. Harrington that the guideline calculations in his plea declaration were preliminary and that the Court would determine the applicable guideline calculation at the time of his sentencing. (1/31/11 Change of Plea Hr'g Tr., at 18-19.)

On December 12, 2011, Mr. Harrington proceeded to trial on Count Eighteen, namely, the charge of possession of a firearm in furtherance of and carried during and in relation to the conspiracy alleged in Count One in violation of 18 U.S.C. § 924(c)(1)(A). Mr. Harrington's trial resulted in a mistrial after the jury was unable to reach a verdict. On February 7, 2012, the

government moved to dismiss Count Eighteen, which the Court granted. During the December 2011 jury trial on Count Eighteen, Mr. Harrington chose to testify on his own behalf. At trial, Mr. Harrington admitted that he was a drug dealer — dealing in heroin and cocaine. Mr. Harrington also testified that he was unable to quantify the total amount of drugs that he sold during his career, but admitted that he sold a lot of drugs and made a lot of money doing so. Further, Mr. Harrington stated that he had carried several firearms for protection for his drug business. Nevertheless, Mr. Harrington testified that the Smith and Wesson handgun the police found in his car on the day of his arrest — that formed the basis of Count Eighteen of the superseding indictment — was not his firearm. In addition, Mr. Harrington maintained that he would have pleaded guilty to the gun count had the government charged the correct gun.

On July 26, 2012, the Court sentenced Mr. Harrington to 264 months in prison — 264 months on Count One and 240 months each on Counts Two and Three to be served concurrently to each other and Count One. Specifically, the Court determined that Mr. Harrington's base offense level was 36 with a drug amount of 10 to 30 kilograms of heroin. In addition, the Court applied a four-level enhancement for a being leader/organizer and a two-level enhancement for gun possession. Over the government's objection, the Court gave Mr. Harrington a three-level reduction for acceptance of responsibility. The Court also rejected to the government's request for an obstruction of justice enhancement.

Mr. Harrington did not directly appeal his conviction or sentence to the United States Court of Appeals for the Seventh Circuit. On July 26, 2013, Mr. Harrington filed the present Section 2255 motion. The government does not challenge the timeliness of Mr. Harrington's Section 2255 motion under 28 U.S.C. § 2255(f)(1).

4

## LEGAL STANDARD

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007); *see also Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Accordingly, a Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley*, 523 U.S. at 621 (relief under 2255 "will not be allowed to do service for an appeal"); *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). Nonetheless, because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Flores,* 739 F.3d 337, 341 (7th Cir. 2014).

## ANALYSIS

In his Section 2255 motion, Mr. Harrington argues that his trial counsel was constitutionally ineffective for: (1) improperly advising him as to the consequences of his guilty plea and subsequent trial testimony; and (2) putting the interests of counsel's law firm ahead of Mr. Harrington's interests. To establish constitutionally ineffective assistance of trial counsel,

Mr. Harrington must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Blake v. United States,* 723 F.3d 870, 879 (7th Cir. 2013). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States,* 648 F.3d 524, 527-28 (7th Cir. 2011).

To establish prejudice, Mr. Harrington must "show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake,* 723 F.3d at 879. In the context of a guilty plea, the United States Supreme Court has articulated that "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received was constitutionally ineffective." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quotations omitted). In this context, under the prejudice prong of the *Strickland* standard, Mr. Harrington "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Lafler v. Cooper,* ___ U.S. ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) ("a defendant must show the outcome of the plea process would have been different with competent advice").

A Section 2255 petitioner may establish that he was denied effective assistance of counsel based on an attorney's conflict of interest two different ways: (1) under the *Strickland*

6

standard; or (2) by showing that an actual conflict of interest adversely affected counsel's performance pursuant to *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See Freeman v. Chandler*, 645 F.3d 863, 868-69 (7th Cir. 2011). Mr. Harrington seeks to establish his ineffective assistance claim based on counsel's conflict of interest pursuant to the *Strickland* standard, under which he must establish prejudice. *See Hall v. United States,* 371 F.3d 969, 973 (7th Cir. 2004) (Under *Strickland*, "petitioner may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense.").[2]

Mr. Harrington argues that his trial counsel violated his Sixth Amendment right to constitutionally effective assistance of counsel because counsel failed to advise him as to the consequences of his decision to plead guilty to Counts One, Two, and Three and then go to trial on Count Eighteen at which he testified to facts that were relevant to his sentencing guideline calculations in respect to the drug quantity and firearm enhancement. Accordingly, Mr. Harrington contends that trial counsel's failures prejudiced him because the Court sentenced him to a significantly lengthier sentence than it would have had counsel properly advised him. In particular, Mr. Harrington contends that he received "almost 80 more months than what he was led to believe was a likely sentence."

The Court turns to whether trial counsel's performance prejudiced Mr. Harrington because it is dispositive. *See Strickland,* 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"). Put differently, "[c]ourts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance." *United States v. Taylor,*

---

[2] *See* Memorandum of Law in Support of Petition, at page 9, footnote 2.

569 F.3d 742, 748 (7th Cir. 2009).

At his January 31, 2011, change of plea hearing — at which Mr. Harrington pleaded guilty to Counts One, Two, and Three of the superseding indictment — the Court asked Mr. Harrington if he had read his plea declaration and whether he discussed his questions regarding the plea declaration with counsel, to which Mr. Harrington answered "yes." (09 CR 0814, 1/31/11 Hr'g Tr., at 15.) Further, the Court asked Mr. Harrington if he had any questions about the plea declaration, to which he stated "no." (*Id.*) Also, the Court asked him if his plea declaration was true and accurate to the best of his knowledge and Mr. Harrington answered "yes." (*Id.*) Then, the government stated the statutory penalties for Counts One, Two, and Three:

> The maximum penalty for Count 1 is life imprisonment, a fine of $4 million and a term of supervised release of at least five year, up to and including life.
>
> For Counts 2 and 3, the maximum penalty for each is 20 years in imprisonment and a fine of $500,000.

(*Id.* at 15.) Thereafter, the Court asked Mr. Harrington if he understood the maximum term of imprisonment on Count One was life imprisonment, to which Mr. Harrington answered "yes." (*Id.*) The government further stated on the record that Count One carried an mandatory minimum term of ten years and Counts Two and Three carry a 20 year maximum term of imprisonment to which Mr. Harrington stated that he understood. (*Id.* at 16.) The Court explained, "[s]o, the maximum term of imprisonment that the Court can impose by statute on the crimes that you are offering to plead guilty to is up to life in prison. Do you understand that, Mr. Harrington?" (*Id.*) Mr. Harrington answered "yes." (*Id.*)

Furthermore, during his plea colloquy, the Court explained to Mr. Harrington that his

counsel anticipated a guideline range of either 188 to 235 months for a base level offense of 36 or 235 to 293 months for a base level offense of 38. (*Id*. at 18-19.) Thereafter, the Court asked Mr. Harrington if he understood this, and Mr. Harrington answered "yes." (*Id*. at 19.) The Court further stated that "it will be up to the Court to determine what the applicable Guideline range is." (*Id*.) Mr. Harrington stated that he understood this. (*Id*.) Mr. Harrington answered "no" when the Court asked him if any promises had been made to him regarding his sentence and again, asked him if he understood that it was the Court's final decision as to his sentence, to which he answered "yes." (*Id*. at 20).

It is well-established that a district court's explanation of the sentencing process to a defendant during the defendant's plea colloquy removes any possible prejudice of counsel's advise on the sentencing consequences. *See Thompson v. United States,* 732 F.3d 826, 830-31 (7th Cir. 2013) (per curiam) (citing *Wyatt v. United States,* 574 F.3d 455, 458–59 (7th Cir. 2009); *Bethel v. United States,* 458 F.3d 711, 718–20 (7th Cir. 2006)). At his change of plea hearing, Mr. Harrington acknowledged the maximum sentences for Counts One, Two, and Three, which included a life sentence. He also acknowledged that his counsel's proposed sentencing guidelines ranges included 188 to 235 months or 235 to 293 months, but that his actual sentence might be higher because the Court controlled sentencing. *See Thomspon,* 732 F.3d at 831; *Wyatt,* 574 F.3d at 458-59. Indeed, Mr. Harrington's statements at his change of plea hearing — that he made under oath — directly contradict his current assertion that the Court sentenced him to 80 more months than "what he was led to believe was a likely sentence." *See Bethel*, 458 F.3d at 719. Indeed, his 264 month sentence fell squarely within one of the guideline ranges anticipated by his counsel.

9

Also, in his Section 2255 motion and legal memoranda, Mr. Harrington does not argue nor present evidence that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial on Counts One, Two, and Three, which is a necessary component of establishing prejudice in the context of a guilty plea.[3] *See Hill*, 474 U.S. at 59; *Warren v. Baenen*, 712 F.3d 1090, 1101 (7th Cir. 2013); *see also Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (in the plea agreement context, prejudice prong focuses on whether counsel's deficient performance was a decisive factor in the defendant's decision to plead guilty rather than going to trial).

In addition, Mr. Harrington was aware of the possible consequences that his trial testimony might have on his sentence as evidenced by his testimony at his December 2011 trial on Count Eighteen. In particular, on cross-examination, the government asked Mr. Harrington about his plea declaration. Specifically, the government read the plea declaration into the record as follows: "Mr. Harrington notes, but disagrees with, the government's position that his offense level should be increased by 2 points for possession of a firearm under Guideline § 2D1.1(b)(1)." (09 CR 0814, 12/16/11, Trial Tr., at 201.) Thereafter, the government asked Mr. Harrington if that was his plea declaration and Mr. Harrington said yes. (*Id*.) Then, the government asked Mr. Harrington — "But you take responsibility for those guns, right?" and Mr. Harrington said, "Yes I do." (*Id*.) On re-direct, Mr. Harrington acknowledged that the Court could consider his trial testimony at sentencing. (*Id*. at 244-46.)

---

[3] Although Mr. Harrington signed his Section 2255 motion under penalty of perjury, he does not state in his motion that but for counsel's errors, he would not have pleaded guilty and insisted on going to trial on Counts One, Two, and Three. *See Weddington v. Zatecky*, 721 F.3d 456, 464 (7th Cir. 2013).

Mr. Harrington was also aware of the consequences of his trial testimony at his sentencing hearing. Specifically, at his July 26, 2012 sentencing hearing, the following exchange took place between the Court and Mr. Harrington:

> Court: Mr. Harrington, have you reviewed the Presentence Investigation Report and the April 25, 2012, supplemental report?
>
> Defendant: Yes, ma'am.
>
> Court: Have you reviewed them with your attorneys?
>
> Defendant: Yes, ma'am.
>
> Court: Other than the issues raised in the objections filed on your behalf by Mr. Brindley [trial counsel] and the sentencing memo filed on your behalf, do you have any other comments, corrections or objections to the information either of these documents, sir?
>
> Defendant: No, ma'am.

(09 CR 0814, 7/26/12 Sent. Tr., at 3.) It is undisputed that Mr. Harrington's Supplemental Presentence Investigation Report discussed the two-level firearm enhancement under U.S.S.G. § 2D.1(b). (*See* 09 CR 0814, R. 540, Supp. Report.) It is also undisputed that the government was seeking a base offense level of 38 based on a drug quantity of over 30 kilograms of heroin, although the Court found that there was less than 30 kilograms of heroin for a base level offense of 36. (Sent. Tr., at 28-29.) Also at sentencing, Mr. Harrington stated:

> My lawyers have been real honest with me. And I know that things could have been different, but my eyes are now wide open. They're very hopeful about how this will go. But for me, I have been at MCC a long time. I understand the Guidelines and what they are, and I have added it up.

(*Id.* at 84.)

Not only was Mr. Harrington abundantly aware of the sentencing consequences associated with testifying at his own trial on Count Eighteen, Mr. Harrington cannot establish

11

that "but for counsel's errors, there is a reasonable probability that he would have received a different sentence" as required to establish prejudice under *Strickland*. *See Griffin v. Pierce,* 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland,* 466 U.S. at 695). As the Court explained at Mr. Harrington's sentencing hearing: "I do note that I am, as I am directed to do, sentencing the defendant consistent with the factors in Section 3553; and, even if the Court's Guideline calculations were wrong, I would impose the same sentence that I am imposing now under the 3553 factors." (Sent. Tr., at 90.) In other words, even if the Court had not found the drug amount to be less than 30 kilograms or did not apply the two-level firearm enhancement pursuant to U.S.S.G. § 2D.1(b), the Court would have still sentenced Mr. Harrington to 264 months in prison. Therefore, the Court denies Mr. Harrington's Section 2255 motion because Mr. Harrington has failed to establish prejudice under the *Strickland* standard.

**II.     Evidentiary Hearing**

Because the motion, files, and records of this case conclusively establish that Mr. Harrington is not entitled to any relief under Section 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Yu Tian Li,* 648 F.3d at 532; *Koons v. United States,* 639 F.3d 348, 354-55 (7th Cir. 2011); 28 U.S.C. § 2255(b).

**III.    Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Mr. Harrington a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649

n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his Section 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012). Under this standard, Mr. Harrington must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Mr. Harrington has not established that jurists of reason would debate that the Court should have resolved his Section 2255 motion differently. Specifically, reasonable jurists would not debate that Mr. Harrington failed to establish that but for counsel's errors, there is a reasonable probability that he would have received a different sentence, *see Griffin,* 622 F.3d at 844, or that but for counsel's errors, he would have insisted on going to trial regarding Counts One, Two, and Three. *See Hill*, 474 U.S. at 59. As such, the Court declines to certify any issues for appeal.

## CONCLUSION

The Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** February 12, 2013

          **ENTERED**

          _____
          **AMY J. ST. EVE**
          **United States District Court Judge**